**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
BANKRUPTCY DIVISION
DIVISION OF ST. THOMAS AND ST. JOHN**

IN RE:

INNOVATIVE COMMUNICATION                    Bankruptcy No. 07-30012 (JKF)
CORPORATION,

      Debtor.                              Chapter 11

STAN SPRINGEL, CHAPTER 11                   **Related to Doc. No. 1073** [Objection to (I)
TRUSTEE OF THE BANKRUPTCY                    Proof of Claim Filed by Huntington
ESTATE OF INNOVATIVE                         National Bank and Assigned to Jeffrey J.
COMMUNICATION CORPORATION,                   Prosser; and (II) Standing of Jeffrey J.
                                             Prosser on Account of Such Claim] **and**
      Movant,                              **Doc. No. 1533** [Chapter 11 Trustee's (I)
                                             Objection to Prosser's Notice of Filing and
v.                                           (II) Designation of Hearing Transcripts
                                             Related to Huntington Claim Matter]
JEFFREY J. PROSSER,

      Respondent.


**MEMORANDUM OPINION**[1]

    Before the court are the Trustee's "Objection to (I) Proof of Claim Filed by Huntington

National Bank and Assigned to Jeffrey J. Prosser; and (II) Standing of Jeffrey J. Prosser on

Account of Such Claim" (hereinafter, the "Objection to Claim")[2] and the "Chapter 11 Trustee's

---

    [1]The court's jurisdiction was not at issue.  This Memorandum Opinion constitutes our
findings of fact and conclusions of law.

    [2]The issue of whether Jeffrey J. Prosser has standing in the New ICC bankruptcy
proceeding is not currently before us.  Trustee's counsel clarified this at the April 20, 2009,
omnibus hearing, stating that ". . . the objection is to the proof of claim and . . . if the heading
                      (continued...)

1

(I) Objection to Prosser's Notice of Filing and (II) Designation of Hearing Transcripts Related to

Huntington Claim Matter" (hereinafter, the "Objection to Notice of Filing").[3]  For the reasons

that follow, the Trustee's Objection to Claim and Objection to Notice of Filing are

SUSTAINED.


## Background

The proof of claim at issue was filed by Huntington National Bank (hereinafter, the

"HNB Claim") in the Chapter 11 bankruptcy proceeding of Innovative Communication

Corporation (hereinafter, "New ICC").  Claim 37-1.  The HNB Claim is filed as a secured claim

in the amount of $1678.50 and is based upon a Motor Vehicle Lease Agreement for the use of a

2004 Lexus GX470 (hereinafter, the "Lease").  Claim 37-1.  The Lease is dated March 17, 2004,

and names Huntington LT as the Lessor and Jeffrey J. Prosser and Innovative Communicatio

[sic] as the Co-Lessees.  Motor Vehicle Lease Agreement, Exhibit 2 to Claim 37-1.  The title to

the vehicle is in the name of Huntington LT.  Certificate of Title, Exhibit 1 to Claim 37-1.

On September 16, 2008, Jeffrey J. Prosser,[4] a Co-Lessee under the Lease, filed a "Notice

---

[2](...continued)
was a little bit misleading, I apologize for that."  Transcript of 4/20/2009, Bankr. Doc. No. 1238
at 39:4-6.

[3]The Trustee's Designation of Hearing Transcripts is not an objection.  The Trustee
designated specific portions of transcripts from the three prior omnibus hearings in which the
validity of the HNB Claim was argued.  The designation of transcripts is not an issue before this
court for disposition.  Trustee's counsel combined an objection with a filing that does not seek
affirmative relief.

[4]Jeffrey J. Prosser is a debtor in an individual Chapter 7 bankruptcy proceeding before
this court.  He has also served as the owner and operator of numerous Innovative
Communication entities, some of which are currently in bankruptcy and one of which allegedly
(continued...)

of Assignment of Claim [and] Waiver of Notice" (hereinafter, the "Notice of Assignment") in

which it is alleged that, on August 29, 2008, Huntington National Bank (hereinafter, "HNB")

transferred "all of its rights, title and interest in and to the [HNB Claim], and any and all security

for the [HNB Claim]" to him for consideration of $1,678.50.  Bankr. Doc. No. 891 at 1.

Chapter 11 Trustee Stan Springel orally raised an objection to the HNB Claim and the

assignment to Prosser before the court on December 19, 2008.  Subsequently, Springel filed his

Objection to Claim.  Bankr. Doc. No. 1073.  Springel has asserted the following bases for his

objection:

> (a)  Prosser is a co-lessee of the Lexus; and thus, he is primarily
> liable under the Lease.  Further, as the Lexus was utilized
> exclusively by Prosser's son, New ICC never received any benefit
> whatsoever relating to the Lexus.  Therefore, Prosser is not entitled
> to assert a claim (whether by assignment or otherwise) against
> New ICC's bankruptcy estate for any payments due under the
> Lease.

> (b)  The Proof of Claim identifies the debtor as "Innovative
> Communication" and the Lease identifies the Lessees as
> "Innovative Communicatio" [sic] and "Jeffrey J. Prosser."  From
> this identification, it is not possible to determine whether New
> ICC, ICC-LLC, or another entity is the applicable party to the
> Lease.

> (c)  The documents that Huntington Bank has attached to the
> Huntington Bank Proof of Claim, which includes a copy of the
> Lease and the Certificate of Title, are insufficient to support the
> Claim.  Those documents only suggest that Huntington LT has a
> Lease with "Innovative Communicatio" and Prosser.  Importantly,
> Huntington Bank has failed to provide a breakdown or a statement
> of the amount of the Claim (*i.e.* how the arrearage is calculated).

> (d) According to the Certificate of Title, Huntington LT is the

---

[4](...continued)
owes the HNB Claim.

registered owner of the Lexus.  However, in the Proof of Claim,
Huntington Bank asserts that its claim is secured by the Lexus.  As
the Lexus is apparently not owned by New ICC, it cannot be
collateral for any amounts owed to Huntington Bank.

(e) Further, Huntington Bank failed to demonstrate that it perfected
any lien on or security interest in the Lexus.

(f) Even if the Proof of Claim were otherwise valid, it is subject to
equitable subordination pursuant to Bankruptcy Code § 510(c).
Specifically, (i) Prosser has engaged in inequitable conduct by,
among other things, procuring the claim in a brazen effort to (A)
circumvent the Court's order holding he has no standing to
participate in the Corporate Debtors' Cases (Bankr. Case No. 07-
30012 DE 805), and (B) create standing in New ICC's bankruptcy
estate by forcing Trustee Springel to expend the time and expense
to further defend against Prosser's obstructionist activities; and
(iii) equitable subordination is consistent with the provisions of the
Bankruptcy Code.

(g) As Trustee Springel has asserted that Prosser is liable to pay
damages and turn over property pursuant to, among other
provisions, Bankruptcy Code §§ 542 and 550 and Prosser has not
yet paid such damages or turned over such property, the Proof of
Claim should be disallowed pursuant to Bankruptcy Code §
502(e).

Objection to Claim, Bankr. Doc. No. 1073 at 4-5, ¶ 11.

The court considered the Objection to Claim during an omnibus hearing commenced on

April 20, 2009.  This hearing was continued first to June 15, 2009, and a second time to July 22,

2009.  During the July 22, 2009, hearing, Trustee's counsel referred to documents provided to

him by Prosser's counsel.  The referenced documents were not filed so copies were provided to

the court during the hearing.  Upon conclusion of the hearing on July 22, 2009, the court granted

Prosser an extension of time until August 24, 2009, to file of record the documents that he

provided to the court at the July 22 hearing.  Transcript of 7/22/2009, Bankr. Doc. No. 1327 at

85:24.  Prosser never filed any such documents.

On September 2, 2009, Prosser filed a "Notice of Filing" to give "notice of his filing of the (1) Amended Proof of Claim . . ., and (2) Assignment of Claim . . ., in support of his previoulsy filed Notice of Assignment [at Bankr. Doc. No. 891]." Bankr. Doc. No. 1367. The Amended Proof of Claim expressly named Huntington LT as the Creditor and was signed by "Creditor, Huntington LT, by and through The Huntington National Bank, its attorney-in-fact as authorized by a Power of Attorney dated December 3, 2004." Amended Proof of Claim, Exhibit 1 to Bankr. Doc. No. 1367, Notice of Filing. The Assignment of Claim attached to the Notice of Filing named Huntington LT as the Assignor and Jeffrey J. Prosser as the Assignee. Assignment of Claim, Exhibit 2 to Bankr. Doc. No. 1367, Notice of Filing. Further, the Assignment of Claim provided that:

> [t]his assignment is being executed on behalf of Huntington LT by
> The Huntington National Bank, as its attorney-in-fact as
> authorized by the "Power of Attorney" dated December 3, 2004. . .
> . This assignment shall amend and replace the assignment dated
> August 29, 2008. It is the intention of Huntington LT, by and
> through its attorney-in-fact that this assignment relate back to
> August 29, 2008.

*Id.* The documents that the court ordered to be filed were not attached to that Notice of Filing.

During a hearing before this court on November 4, 2009, when the matter of the Trustee's Objection to Claim arose, Prosser was again ordered to file of record, by November 13, 2009, the documents upon which he relied at the July 22, 2009 hearing.[5] Springel was ordered to

---

[5]Again, the documents were presented to the court for use at the hearing by Prosser's counsel during the July 22, 2009, hearing. At the November 4, 2009, hearing, the court, referring to those documents, stated: "Then by November the 13th, the debtor is to file, or if it's already filed, notify the Court where it appears on the docket because it has not been brought to my attention if it's been filed . . . I can say that, affirmatively. . . . How about if I say any documents provided to counsel for the Chapter 11 Trustee previously, and that are not already of

(continued...)

5

file any objection to those documents, once filed, on or before November 20, 2009. Springel

was also granted time to designate the relevant portions of prior transcripts where his counsel

argued his objections to the documents provided to the court by Prosser.[6]  Prosser did not file the

documents. Instead, on November 16, 2009, Prosser filed the Notice of Filing a second time.

Bankr. Doc. No. 1524. Attached to this second notice was the prior Notice of Filing (Bankr.

Doc. No. 1367), including the Amended Proof of Claim and Assignment of Claim.[7]  In response,

Springel filed the Objection to Notice of Filing. Bankr. Doc. No. 1533. The matter is ripe for

disposition.[8]


**Validity of the HNB Claim**

Springel asserts numerous objections to the validity of the HNB Claim. First, the Trustee

contends that because the Lexus was used exclusively by Prosser's son, New ICC received no

benefit from the Lease and, accordingly, no claim for payments under the Lease may be asserted

against the New ICC bankruptcy estate. Next, Springel asserts that, because the Lease attached

---

[5](...continued)
record – well, no, I'll just say previously, so that I give you full rein to get everything filed that
needs to be filed so I can then get this matter determined." Transcript of 11/4/2009, Bankr. Doc.
No. 1515 at 16:8-12 & 19-23. Prosser has not filed the documents. Thus, the court's reference
to them is to the documents provided in court on July 22, 2009.

[6]Springel did so in his Objection to Notice of Filing, designating portions of the April 20
and July 22, 2009, omnibus hearing transcripts. Objection to Notice of Filing, Bankr. Doc. No.
1533 at 7, ¶ 23.

[7]To be clear, the Amended Proof of Claim and the Assignment of Claim attached to the
second Notice of Filing at Bankr. Doc. No. 1524 were the same documents attached to the first
Notice of Filing at Bankr. Doc. No. 1367.

[8]We note that the court provided both Prosser and Springel with the opportunity to brief
the issues before us. However, neither party did so.

to the HNB Claim identifies the co-lessee as "Innovative Communicatio" [sic], it is impossible to

determine from the HNB Claim whether New ICC is the proper entity obligated to pay the debt

alleged in the HNB Claim.  Objection to Claim, Bankr. Doc. No. 1073 at 4-5, ¶ 11.

Additionally, the Trustee asserts that the HNB Claim is invalid because it fails to include the

proper documentation necessary to support the claim.  Specifically, the Trustee contends that

HNB "has failed to provide a breakdown or statement of the amount of the Claim (*i.e.* how the

arrearage is calculated)" (Objection to Claim, Bankr. Doc. No. 1073 at 4-5, ¶ 11) and that the

documents that are attached to the claim fail to identify HNB as the proper holder of the claim.

Transcript of 4/20/2009, Bankr. Doc. No. 1238 at 34:13-18.

 Under Rule 3001 of the Federal Rules of Bankruptcy Procedure, a proof of claim is

defined as "a written statement setting forth a creditor's claim" and may be filed either by the

creditor or an authorized agent of the creditor.  Fed. R. Bankr. P. 3001(a)-(b).  A proof of claim

is presumed to be *prima facie* valid if it alleges facts sufficient to support a legal liability to the

claimant.  Fed. R. Bankr. P. 3001(f); *In re Allegheny Int'l Inc.*, 954 F.2d 167, 173 (3d Cir. 1992).

However, when an objection to the claim is filed, the initial presumption may be overcome and

the burden shifted:

> The burden of going forward then shifts to the objector to produce
> evidence sufficient to negate the *prima facie* validity of the filed
> claim. . . .  In practice, the objector must produce evidence which,
> if believed, would refute at least one of the allegations that is
> essential to the claim's legal sufficiency.  If the objector produces
> sufficient evidence to negate one or more of the sworn facts in the
> proof of claim, the burden reverts to the claimant to prove the
> validity of the claim by a preponderance of the evidence. . . .  The
> burden of persuasion is always on the claimant.

*Id.* at 173-74 (citations omitted).  *See also* 11 U.S.C. § 502(a).

7

*Identification of New ICC as the Debtor*

A proof of claim must clearly make a demand against the *debtor*. *See In re American Classic Voyages Co.*, 405 F.3d 127, 131 (3d Cir. 2005) (citing *In re Thompson*, 227 F. 981, 983 (3d Cir. 1915)). Thus, it is essential that the creditor clearly identify the debtor as the party who is obligated to satisfy the proof of claim. *Id.* Here, the HNB Claim fails to demonstrate that New ICC is the appropriate debtor – that is, the party that is obligated under the Lease. Based on both the HNB Claim itself, as well as the documentation attached to the HNB Claim, it is unclear which, if any, Innovative Communication entity is actually a party to the Lease as a Co-Lessee and is therefore obligated to the Lessor.[9] Attached to the Claim is a Certificate of Title which names Huntington LT as the Registered Owner of the Lexus and does not name any Innovative Communication entity in any capacity. Also attached to the HNB Claim is the Lease which, as previously stated, does not identify which Innovative Communication entity is a Co-Lessee. Furthermore, the two documents provided to the court by Prosser during the July 22, 2009, omnibus hearing do not identify New ICC as the debtor obligated on the HNB Claim. In fact, neither document names any Innovative Communication entity. Thus, the HNB Claim fails to make a demand against the Debtor.

Prosser argues that the fact that the HNB Claim was filed in the New ICC bankruptcy

---

[9]Notably, there are Innovative Communication companies that are not in bankruptcy (Sealed Transcript of 12/11/2006, Bankr. Case. No. 06-30008, Bankr. Doc. No. 216 at 150:14-18) and two that are in bankruptcy. The two entities that are in bankruptcy are Innovative Communication Company LLC (i.e., ICC-LCC at Bankr. Case No. 06-30008) and Innovative Communication Corporation (i.e., New ICC at Bankr. Case No. 07-30012). In testimony before this court on December 11, 2006, Prosser identified himself as the "Managing Member" of ICC-LCC and the "Chairman of the Board of New Innovative" (i.e., New ICC). Sealed Transcript of 12/11/2006, Bankr. Case. No. 06-30008, Bankr. Doc. No. 216 at 95:7-15 & 134:3-4. There is no mention in that transcript of Mr. Prosser serving as the "President" of either Debtor.

case is evidence that the claim is *prima facie* valid.   However, even if the HNB claim was

presumed to be *prima facie* valid, this presumption was overcome when the Trustee filed an

objection to the HNB Claim.  Upon the Trustee's objection, the creditor who filed the HNB

Claim must come forward with evidence to show which, if any, Innovative Communication

entity was a signatory.  Prosser has pointed to the Lease attached to the HNB Claim.  The Lease

is signed by Jeffrey J. Prosser in three places: as "Co-Lessee Signature" (but there is no signature

at all in the place designated as "Lessee"); as "Business Lease Signature;" and under

"Authorized Signature and Title" wherein Mr. Prosser signed "Jeffrey Prosser, President."  No

corporate name for which Mr. Prosser was "President" is stated.[10]

   With respect to the Trustee's objection that he is unable to identify which Innovative

Communication entity is the proper debtor of the HNB Claim, Prosser asserts that it is the

Trustee himself who has the information necessary to determine if New ICC is, in fact, the Co-

Lessor under the Lease, as the Trustee possesses the Debtor's books and records.  We agree that

the Trustee has the business records.  At the April 20, 2009, omnibus hearing, the court stated

that ". . . the trustee is in control of the Innovative Communication entities and I think at least

they are [sic] required to show whether on the books and records if . . . there is some information

regarding whether or not there is a claim owed."  Transcript of 4/20/2009, Bankr. Doc. No. 1238

at 43:16-20.  We find that the Trustee has failed to produce any evidence, even an affidavit, of

---

[10]We again note that, during testimony before this court, Prosser identified himself as the "Managing Member" of ICC-LCC and the "Chairman of the Board" of New ICC.  Sealed Transcript of 12/11/2006, Bankr. Case No. 06-30008, Bankr. Doc. No. 216 at 150:14-18.  That transcript does not include any testimony indicating that Jeffrey J. Prosser is the President of either entity.  This is the transcript nearest in time to the March 2004 Lease that the court could locate.

what efforts he made to locate the Lease and what, if any, records exist, such as minutes that approved the transaction, to show which company is obligated. Thus, with respect to this objection, the court does not know what New ICC's corporate records show. On the other hand, Prosser is also obligated under the Lease and signed the Lease in the capacities noted above. He, too, has produced no affidavit or other evidence to indicate which corporate entity was involved. Because the burden of persuasion always rests on the claimant, we find that Prosser, as the purported assignee of the HNB Claim, has failed to produce sufficient evidence to indicate which, if any, Innovative Communication entity was involved in this transasction.

*Identification of Huntington National Bank as the Debtor*

Springel also objects to the validity of the HNB Claim on the basis that the documents attached to the claim are insufficient to support the claim.

"When a claim . . . is based on a writing, the original or a duplicate shall be filed with the proof of claim." Fed. R. Bankr. P. 3001(c). In *In re Kincaid*, 388 B.R. 610 (Bankr. E.D. Pa. 2008), the U.S. Bankruptcy Court for the Eastern District of Pennsylvania addressed the failure of a creditor to establish that it was the assignee entitled to payment from the debtor. The court held that, while the failure to attach documentation is not by itself grounds for disallowance of a claim, the failure to do so deprives the claim of the presumption of *prima facie* validity. *Id.* at 614 (citations omitted).

The HNB Claim expressly names HNB as the creditor. Attached to the claim is the Certificate of Title for a 2004 Lexus as well as the Lease. The Certificate of Title names Huntington LT as the owner of the Lexus. The Lease, as stated above, names "Huntington LT" as the Lessor and "Jeffrey J. Prosser and Innovative Communicatio [sic]" as the Co-Lessees.

10

Nowhere on the face of either document is HNB named.

The court has previously determined that the Certificate of Title and the Lease were insufficient to prove HNB's ownership of the claim. At the April 20, 2009, omnibus hearing, the court referred to the documents initially attached to the HNB Claim and stated that "[t]hese documents do not support that the creditor who filed the claim owns the [vehicle]. I'll give you some time for discovery, but . . . the *prima facie* evidence of this claim does not substantiate that the entity that filed the claim owns the claim." Transcript of 4/20/2009, Bankr. Doc. No. 1238 at 47:8-12. The court continued the matter to the June 15, 2009, omnibus hearing in order to provide Prosser with an opportunity to proffer additional evidence to demonstrate HNB's ownership of the claim. Nothing was provided by June 15. Rather, at the July 22, 2009, hearing, Prosser provided the court with copies of a Trust Agreement and a Power of Attorney that had been previously provided to the Trustee. As noted, *supra*,[11] these documents were not filed of record.

The Trust Agreement presented by Prosser is dated April 1, 2000. The Trust Agreement provides that "[t]here is hereby formed . . . a trust to be known as Huntington LT (the 'Trust'), in which name the Managing Trustee may engage in the activities of the Trust, make and execute contracts and other instruments on behalf of the Trust, and sue and be sued." Trust Agreement, Provided to the court on 7/22/2009 at 7, ¶ 1. *See also* Transcript of 7/22/2009, Bankr. Doc. No. 1327 at 49:16-20. The Managing Trustee is defined as U.S. Bank Trust National Association which, by means of assignment, became HNB. Trust Agreement, Provided to the court on 7/22/2009 at 7. *See also* Transcript of 7/22/2009, Bankr. Doc. No. 1327 at 49:21-22.

---

[11]*See* note 5 and accompanying text.

11

The Power of Attorney presented by Prosser is dated December 3, 2004.  The Power of

Attorney states that:

> Huntington LT (the "Grantor") . . . does hereby appoint The
> Huntington National Bank . . . (the 'Grantee'), as its attorney-in-
> fact, with full power of substitution and hereby authorizes and
> empowers the Grantee, *in the name of and on behalf of the Grantor
> . . . or the Origination Trust*, to take the following actions (the
> "Actions") from time to time with respect to disposition, sale or
> other transfer of any assets or property of Grantor, for the purposes
> of enabling the Grantee *in the name of the Grantor or the
> Origination Trust* to:
> (a) dispose of, sell, assign or otherwise transfer any and all assets
> or property of Grantor;
> (b) execute any and all agreements, contracts, bills of sale,
> assignments, financing statements or any other documents in
> connection with any of the foregoing; and
> (c) execute such other documents or perform such other actions to
> accomplish any of the foregoing.
> The Grantee is hereby empowered to do any and all lawful acts
> necessary or desirable to perform or effect such Actions . . . and
> the Grantor hereby ratifies and confirms any and all lawful acts
> that the Grantee shall do pursuant to and in conformity with this
> Power of Attorney.[12]

Power of Attorney, Provided to the court on 7/22/2009 (emphasis added).

Springel argues that, assuming without concluding that New ICC is one of the lessees

under the Lease, the express language of both the Trust and the Power of Attorney require that

HNB act either "on behalf of" or "in the name of" Huntington LT.  Accordingly, Springel

contends that, because the HNB Claim was filed by "Huntington National Bank" for itself and

was not filed "in the name of" or "on behalf of" Hungtington LT, the HNB Claim is invalid

---

[12]The Power of Attorney allows HNB to perform the enunciated actions "in the name of
and on behalf of the Grantor or the Origination Trust."  Power of Attorney, Provided to the court
on 7/22/2009.  Both the Grantor and the Origination Trust are defined as Huntington LT.  *Id.*
The HNB Claim was filed by HNB and was not filed or signed in the name of or on behalf of
Huntington LT.  Claim 37-1.

inasmuch as HNB is not itself a creditor of New ICC.  Prosser counters that both the Trust and

Power of Attorney establish the necessary relationship between HNB and Huntington LT that

allows HNB to properly file a proof of claim in the New ICC bankruptcy case.

A power of attorney is to be construed in accordance with the rules for the interpretation

of written instruments.  *Villanueva v. Brown*, 103 F.3d 1128, 1136 (3d Cir. 1997) (citing

*Kisselbach v. County of Camden*, 638 A.2d 1383, 1386 (N.J. Super. Ct. App. Div. 1994).  The

general and specific provisions of a power of attorney are to be construed in light of the "familiar

principle of law that general powers in such instruments are limited by the specific powers

therein granted."  *Von Wedel v. McGrath*, 180 F.2d 716, 718 (3d Cir. 1950) (quoting *Lanahan v.

Clark Car Co.*, 11F.2d 820, 824 (3d Cir. 1926)).  When a power of attorney is unambiguous and

complete, the court must consider "the intent as actually expressed in the document itself. . . .

Under the settled law, the specific language governs . . . and the command of the specific

language must be pursued with legal strictness."  *Von Wedel*, *supra* at 719.

Similarly, courts interpret trust agreements as they do other contractual provisions in

written agreements.  "[C]ourts construe terms in trust agreements without deferring to either

party's interpretation."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112 (1989).

"[T]rust law looks to the settlor's intent, but only the settlor's intent *as manifested in the trust

instrument* is relevant, unless there is an ambiguity in the instrument."  *Frank v. Colt Indus., Inc.*,

910 F.2d 90, 99 (3d Cir. 1990) (citing Restatement (Second) of Trusts § 4, cmt. c & § 38, cmt.

a).  If a trustee exceeds the authority given to him as specified in the trust instrument, he is not

acting in accordance with the instrument, and this determination turns upon the language of the

trust agreement.  *Robinson v. Chance*, 213 F.2d 834, 836 (3d Cir. 1954).  "Whatever

13

understanding the settlor may have had, he is limited by what he did in setting up the trust." *Id.*

In this case, both the Trust and the Power of Attorney, by their plain and unambiguous language, require HNB to perform all acts authorized under each document to be executed either "in the name of" or "on behalf of" Huntington LT. Therefore, because the HNB Claim was filed solely by and for HNB, the claim is invalid on this basis. Prosser has failed to present us with any additional documentation to support his argument that HNB had the authority to file the proof of claim on its behalf. Notably, Prosser has been afforded several opportunities to do so and has failed to take advantage of the time given to him.[13] Therefore, Prosser's argument that the HNB Claim is *prima facie* valid under Rule 3001 must fail. In *In re DePugh*, 409 B.R. 84, 98 (Bankr. S.D. Tex. 2009), the court explained:

> This Court does not believe that the Supreme Court contemplated that creditors could ignore Bankruptcy Rule 3001's requirements unless and until a debtor complains and then cry "no harm, no foul" by producing documents that should have been produced initially. This latter scenario subverts the fundamental process by which the American legal system is based–that a claimant must come forward with at least some evidence that its claims are valid before collecting on their claims.

---

[13]In *In re Kincaid*, 388 B.R. at 615 n.4, the court stated:

> Most courts will provide the claimant an opportunity to supplement its documentary support as [the claimant] did here. Given the volume of claims filed by entities such as [the claimants], it is arguably an unnecessary burden on the claimants and the courts to have the extra documentation filed when the debtor does not object to the claim. [*In re*] *Heath*, 331 B.R. [424], 435-36 [(9th Cir. B.A.P. 2005)] (citing cases). However, upon request of a debtor and assuming the debtor has a good faith basis for claiming the debt is not properly owed, an assignee should be prepared to provide the additional documentation or suffer the loss of the presumption afforded its claims. . . .

14

(citing *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 21 (2000)).  The court also instructed that "[c]reditors are provided ample leeway to have their claims presumed valid–and to shift the evidentiary burden to the debtor–if they simply comply with Bankruptcy Rule 3001 the *first* time they file a proof of claim."  *Id.*  Prosser has been provided with "ample leeway" to provide sufficient documentation to meet the requirements of Rule 3001.

Thus, although the HNB Claim may not be *prima facie* invalid merely because the creditor failed to attach sufficient documentation to the original claim, we find that, here, the original HNB Claim is invalid because of the failure of either HNB, the purported holder of the original claim, or Jeffrey Prosser, the purported assignee of the original claim, to establish that HNB is, in fact, the proper holder of any claim arising from the Lease.

The court notes that Springel also objects to HNB's failure to include a breakdown or statement of the amount of the claim, as well as any other indication of how the arrearage was calculated.  The court notes that, here, the proof of claim is filed in the amount of $1678.50. Claim 37-1.  That amount cannot be calculated from the Lease.[14]  No explanation of the amount claimed is provided.  Again, while this omission alone may not invalidate the claim, it does deprive the claim of *prima facie* validity under Rule 3001(f).  Prosser has not produced any documentation or other evidence to refute this objection by Springel.

Based on the above analysis, we find the HNB Claim to be invalid.


**Use and Ownership of the Lexus under the Lease**

---

[14]For example, from the face of the Lease, if two payments were owed, the amount due would be $1670.62.

15

The Trustee's Objection to Claim asserts that:

> According to the Certificate of Title, Huntington is the registered
> owner of the Lexus.  However, in the Proof of Claim, Huntington
> asserts that the Claim is secured by the Lexus.  As the Lexus,
> apparently is not owned by New ICC, it cannot be collateral for
> any amounts owed to Huntington.  Further, Huntington has failed
> to demonstrate that it perfected any lien or security interest in the
> Lexus.

Objection to Claim, Bankr. Doc. No. 1073 at 4, ¶ 11.

The Trustee is correct.  Assuming without concluding that New ICC is a lessee, it does

not own or possess the Lexus and this fact is not disputed.[15]  Thus, the Lexus is not property of

this estate.  There can be no secured claim against the estate in something that is *not* property of

this estate.  *See* 11 U.S.C. § 506(a)(1).  Moreover, the Lease itself states:  "This is a lease

agreement.  This is not a purchase agreement."  Exhibit 2 of Claim 37-1.  Thus, if there were any

claim against New ICC, it would at best be an unsecured claim.  As stated, however, there is no

allowed claim of any kind.

**Prosser's Filing of an Amended Proof of Claim**

On September 2, 2009, Prosser filed a Notice of Filing to inform the Parties of the filing

---

[15]Springel alleges that "[u]pon information and belief, the Lexus has been used
exclusively by one of Prosser's sons, and never by New ICC."  Objection to Notice of Filing,
Bankr. Doc. No. 1533 at 2, n.1.  *See also* Transcript of 7/22/2009, Bankr. Doc. No. 1327 at
53:19-21 ("It's undisputed that [Prosser's] son was the one that used the vehicle, so there was
never a benefit to New ICC provided by the lease").  Prosser has not refuted this allegation.  He
twice had the opportunity to do so.  First, he could have, but did not, file a response to the
Trustee's Objection to Notice of Filing.  Second, he could have rebutted the averment at the July
22, 2009, omnibus hearing.

of an Amended Proof of Claim.[16]  Bankr. Doc. No. 1367.  The Amended Proof of Claim named

Huntington LT as the Creditor and was signed by "Creditor, Huntington LT, by and through The

Huntington National Bank, its attorney-in-fact as authorized by a Power of Attorney dated

December 3, 2004."  Amended Proof of Claim, Exhibit 1 to Bankr. Doc. No. 1367, Notice of

Filing.  Attached to the Amended Proof of Claim was an Assignment of Claim which purported

to transfer to Jeffrey J. Prosser, named as the Assignee, all of Huntington LT's "right, title and

interest in and to the claim or claims and any amendments of claims of Assignor . . . against

Innovative Communication Corp. (the 'Debtor')."  Assignment of Claim, Exhibit 2 to Bankr.

Doc. No. 1367, Notice of Filing.  The Assignment of Claim purportedly amended and replaced

the assignment dated August 29, 2008, and was intended to relate back to August 29, 2008.  *Id.*

The assignment indicated that consideration of $1,678.50 was paid by Prosser to Huntington LT

for this assignment.  *Id.*

        The court agrees with the Trustee's argument that the Amended Proof of Claim is

untimely and invalid.  First, Huntington LT did not file a proof of claim in the New ICC

bankruptcy case in the first place.  The bar date for the filing of claims against the New ICC

bankruptcy estate was February 11, 2008, and Huntington LT is barred from filing a proof of

claim in this case now.  Thus, Huntington LT could not amend a claim it did not file.  Second,

because we previously determined that the HNB Claim is invalid, no valid claim exists that can

be amended.  "[B]efore a court may permit a party to file an amended proof of claim, there must

be something filed in the bankruptcy court capable of being amended."  *In re Vertientes, Ltd.*,

---

[16]The same Notice of Filing was filed again by Prosser on November 16, 2009.  *See*
Bankr. Doc. No. 1524.

845 F.2d 57, 60 (3d Cir. 1988) (citations omitted).  Here, there is no valid claim to be amended.

Third, the alleged amendment was filed by an entity that had no interest in the claim by the time

the amendment was filed.  The original claim, as asserted by Prosser, had been assigned to him

well before the alleged amendment was filed.  The Amended Claim, as evidenced by Prosser's

Notice of Filing, was filed *by* Huntington LT, by and through HNB, *after* the claim allegedly had

been assigned to Jeffrey J. Prosser.  Having assigned away "all of [its] rights, title and interest in

and to the claim or claims and any amendments of claims," neither Huntington LT nor HNB had

anything left to amend.  Assignment of Claim, Exhibit 2 to Bankr. Doc. No. 1367, Notice of

Filing; Assignment of Claim, Exhibit 2 to Bankr. Doc. No. 1524, Notice of Filing.

Therefore, the court finds that the Amended Proof of Claim itself is invalid.


## Prosser's Purchase of the HNB Claim

Even assuming, arguendo, that HNB is the proper claim holder,[17] that either the HNB

Claim or the Amended Proof of Claim was valid, and that New ICC was a Co-Lessee, we find

that, as a co-obligor under the terms of the Lease, Prosser has extinguished the claim against

New ICC by his payment of $1,678.50 in consideration for the alleged assignment of the claim.

Case law regarding the purchase of a claim by an assignee who is also obligated under

the contract to pay the debt is sparse.  While the court has been unable to find any case law

directly on point,[18] that is, where a Chapter 7 debtor purchases a claim under which he is already

---

[17]We again note that if HNB was not the proper claim holder, it had no right or legal
capacity to transfer the claim to Prosser.

[18]As noted, neither parties provided a brief.

co-obligated with an entity that he owned and controlled at the time the obligation was incurred,

case law regarding the purchase of a mortgage by a mortgagee is analogous to the situation at

bench.  Only when the payment is made by one who is not already obligated will there be an

assignment rather than a satisfaction of the debt.  "It is clearly settled in numerous cases that a

payment made to a mortgagee by a third party, who is under no obligation by contract to pay the

debts, will not operate as a satisfaction of it, unless it be manifestly the intention or interest of

the party making the payment, that it should so operate."  *Walker v. Stone*, 20 Md. 195 (1863).

The court quoted the court's decision in *Brown v. Topham*, 3 Cushing 545, 555:

> Whether a given transaction shall be held in legal effect to operate
> as a payment and a discharge, which extinguishes the mortgage, or
> as an assignment which preserves and keeps it on foot, does not so
> much depend upon the form of the word used, as upon the relation
> subsisting between the parties advancing the money and the party
> executing the transfer and release, and their relative duties.  If the
> money advanced is by one whose duty it is by contract or
> otherwise, to pay and cancel the mortgage, it shall be held to be a
> release and not an assignment; when no such controlling obligation
> or duty exists, such an assignment shall be held to constitute an
> extinguishment or an assignment according to the intent of the
> parties, and their respective interests on the subject will have a
> strong bearing on the question of such intent.

*Walker*, *supra* at 195.  Here, Prosser, the co-obligor, paid the debt by paying the full value of the

claim asserted.  He extinguished not just the debt allegedly owed by New ICC but also the debt

*he* owed.

A similar issue arises with respect to the doctrine of subrogation.  "Subrogation is the

substitution of one party in place of another with reference to a lawful claim or right, so that the

one who is substituted succeeds to the position of the other in relation to the other's claim or

right."  *In re Stratford Lamps, Inc.*, 120 B.R. 31, 33 (Bankr. W.D. Pa. 1990) (citing *Sumitomo*

19

*Corp. of America v. M/V Saint Venture*, 683 F. Supp. 1361, 1368 (M.D. Fla. 1988).  Subject to

explicit limitations, § 509(a) of the Bankruptcy Code provides that "an entity that is liable with

the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such

claim, is subrogated to the rights of such creditor to the extent of such payment."  11 U.S.C.

§ 509(a).  Section 509(b)(2) of the Bankruptcy Code denies subrogation if "as between the

debtor and such entity, such entity received the consideration for the claim held by such

creditor."  *Id.* at § 509(b)(2).  Thus, § 509(b)(2) "excludes those who are primarily liable for the

debt from subrogation because they received consideration for paying the debt."  *In re Celotex*

*Corp.*, 472 F.3d 1318, 1321 (11th Cir. 2006) (citations omitted).  Bankruptcy courts have held

that § 509(b)(2) "embodies the general principle that subrogation is not available to a party who

satisfies a debt for which that party was primarily obligated."  *In re Cornmesser's Inc.*, 264 B.R.

159, 163 (Bankr. W.D. Pa. 2001) (citing *In re Russell*, 101 B.R. 62, 65 (Bankr. W.D. Ark.

1989)).  Simply stated, an individual cannot seek subrogation for the payment of his own debt.

*Id.  See also Union Joint Stock Land Bank of Detroit, Mich. v. Byers*, 33 F.Supp. 491, 493 (W.D.

Pa. 1938).  "In such a case payment is extinguishment."  *Union Joint Stock Land Bank*, *supra* at

493.  *See also Grand Council Royal Arcanum v. Cornelius*, 47 A. 1124, 1124 (Pa. 1901)

("Payment of a debt by the real debtor is *prima facie* an extinguishment of it").

     In the case at bench, Prosser argues that the consideration provided to HNB constituted a

purchase of the claim and not a payment of the claim.  Notably, the amount of consideration was

the same amount, to the penny, stated in the proof of claim as owed by the co-obligors, Prosser

and Innovative Communicatio [sic], under the terms of the Lease attached to the HNB Claim.

Further, it is clear from the facts of this case that Prosser, as a Co-Lessee under the Lease, is

primarily obligated for the debt owed to the Lessor.  It is equally clear that Prosser received

consideration under the Lease, specifically the use of the Lexus.[19]  We find that, because Prosser

is primarily liable and obligated under the Lease to remit payment to the Lessor, the $1,678.50

paid by Prosser to purchase the assignment also constitutes satisfaction of the debt and

extinguishes the claim.

Thus, even if we could find, which we cannot, that the HNB Claim was valid against

New ICC, the claim was extinguished by Prosser's payment to HNB of $ 1,678.50, the purported

amount of the obligation owed, as consideration for the transfer of the claim.


**Equitable Subordination of the HNB Claim**

In his Objection to Claim, the Trustee asserts that, even if the HNB Claim is valid, it is

subject to equitable subordination under 11 U.S.C. § 510(c) because of Prosser's alleged

inequitable conduct and acquisition of the HNB Claim in bad faith.

At this time, it is not necessary for us to consider either this objection or whether Prosser

acquired either the HNB Claim or the Amended Claim in bad faith.[20]  Because we have

---

[19]The Lexus was apparently only used by Prosser's son who had no connection to New
ICC.  *See supra* note 15.

[20]Prosser states that he appealed a finding of this court during an evidentiary hearing,
made to determine whether Prosser had standing to object to the evidence and examine
witnesses, that Prosser's purchase of the claim as an alleged "assignment" was in bad faith.  He
further argues that the finding precludes jurisdiction in this court to examine the merits of an
objection to the claim.  We disagree.  Prosser's appeal to the District Court of the Virgin Islands
was dismissed as untimely on July 21, 2009.  *In re Innovative Comm. Corp.*, D.V.I. No. 08-CV-
160, Doc. No. 10.  Regardless, the question of whether Prosser's effort to become a creditor of
New ICC by purchasing an obligation he already owed was made in bad faith is an entirely
different issue from the validity of the underlying claim.

determined both the HNB Claim and the Amended Claim to be invalid, any purported

assignment of either claim to Prosser, whether in good or bad faith, likewise is necessarily

insufficient to raise a claim against this estate.   The payment of an invalid claim does not give

Prosser entitlements in this case.   His rights rise no higher than his assignor's and assignment of

an invalid claim does not give the assignee a valid claim.   Even if we had found that either the

HNB Claim or the Amended Claim was valid, which we did not, we explained that the claim was

extinguished by Prosser's payment of $1,678.50 in consideration for the assignment.   Thus, no

claim that can be equitably subordinated exists.

### Disallowance of the HNB Claim under 11 U.S.C. § 502(e)

Finally, the Trustee asserts that because "Prosser is liable to pay damages and turn over

property pursuant to, among other provisions, Bankruptcy Code §§ 542 and 550 and Prosser has

not yet paid such damages or turned over such property, the [HNB Claim] should be disallowed

pursuant to Bankruptcy Code § 502(e)."   Objection to Claim, Bankr. Doc. No. 1073 at 5, ¶ 11.

The turnover action is pending before this court.   *Springel v. Prosser*, Adv. Proc. No.

07-03010.   Therefore, this objection cannot be addressed by the court at this time, but need not

be addressed in any event, because the claim has been disallowed for the other reasons stated

herein.

### Timeliness of Trustee's Objection

The court acknowledges Prosser's argument that Springel failed to object to the original

HNB Claim until *after* the claim was purportedly assigned to Prosser.   The court finds this fact to

22

be of no consequence.  Rule 3007 of the Federal Rules of Bankruptcy establishes no deadline in

which an objection to a proof of claim must be filed.  Fed. R. Bankr. P. 3007.  Indeed, trustees

often defer filing objections until it is clear that there will be a distribution to unsecured

creditors.  That point has not yet been reached in this case.  Thus, the timing of the objection is

permissible.


**Conclusion**

Based on the foregoing reasons, Trustee's Objection to Claim and Objection to Notice of

Filing are SUSTAINED.[21]

An appropriate Order will be entered.


DATE:    Dated: 4/27/2010
         15:52:42

        *Judith K. Fitzgerald*    cjs

        Judith K. Fitzgerald
        United States Bankruptcy Judge

---

[21]As noted earlier (*see* notes 2 and 3), the Trustee did not address his objection to the standing of Prosser and, likewise, this court has not addressed this issue.  Trustee's Designation of Hearing Transcripts is not an objection to anything but, rather, is a part of a caption describing a combined filing.  The designation should have been filed as a separate pleading.

**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
BANKRUPTCY DIVISION
DIVISION OF ST. THOMAS AND ST. JOHN**

IN RE:

INNOVATIVE COMMUNICATION                Bankruptcy No. 07-30012 (JKF)
CORPORATION,

     Debtor.                                    Chapter 11


STAN SPRINGEL, CHAPTER 11               **Related to Doc. No. 1073** [Objection to (I)
TRUSTEE OF THE BANKRUPTCY               Proof of Claim Filed by Huntington
ESTATE OF INNOVATIVE                    National Bank and Assigned to Jeffrey J.
COMMUNICATION CORPORATION,              Prosser; and (II) Standing of Jeffrey J.
                                        Prosser on Account of Such Claim] **and
     Movant,                   Doc. No. 1533** [Chapter 11 Trustee's (I)
                                        Objection to Prosser's Notice of Filing and
v.                                      (II) Designation of Hearing Transcripts
                                        Related to Huntington Claim Matter]
JEFFREY J. PROSSER,

     Respondent.


**ORDER**

    **AND NOW**, this __27th__ day of __April____, 2010, for the reasons expressed in the

foregoing Memorandum Opinion, it is **ORDERED, ADJUDGED, and DECREED** that the

Trustee's "Objection to (I) Proof of Claim Filed by Huntington National Bank and Assigned to

Jeffrey J. Prosser, and (II) Standing of Jeffrey J. Prosser on Account of Such Claim" is

**SUSTAINED** in part in that the Objection to Claim is sustained.  However, the Trustee did not

pursue, and the court has not ruled upon, the Trustee's Objection to Standing in this Opinion.

Thus, no Order is issued regarding the Objection to Standing.

    It is **FURTHER ORDERED** that the "Chapter 11 Trustee's (I) Objection to Prosser's

1

Notice of Filing and (II) Designation of Hearing Transcripts Related to Huntington Claim

Matter" is **SUSTAINED** in part in that the Objection to Notice of Filing is sustained but the

Designation of Hearing Transcripts was filed by the Trustee and is not part of the Objection.

Thus, no ruling or Order is required or made regarding to the Designation of Hearing

Transcripts.

It is **FURTHER ORDERED** that counsel for the Trustee shall immediately serve a copy

of this Memorandum Opinion and Order on all parties in interest who do not receive electronic

notice and shall file a certificate of service forthwith.

Dated: 4/27/2010
15:53:27

Judith K. Fitzgerald
United States Bankruptcy Judge

2